IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TY INC.,<br><br>        Plaintiff,<br><br>  v.<br><br>SOFTBELLY'S INC. and POSITIVE<br>PRODUCTS CONSULTANTS, LLC,<br><br>        Defendants. | Civil Action No. 00 C 5230<br><br>Judge Lefkow<br><br>Magistrate Judge Levin |

## FINAL JURY INSTRUCTIONS AND VERDICT FORM

Plaintiff hereby submits the following final, unmarked jury instructions, based on the

Court's ruling at the jury instruction conference held on April 25, 2006.

Dated: April 26, 2006

Respectfully submitted:

/s/ Laurie A. Haynie
James P. White, Esq. (3001032)
Laurie A. Haynie, Esq. (6195230)
Louise T. Walsh, Esq. (6230479)
J. Aron Carnahan, Esq. (6242642)
WELSH & KATZ, LTD.
120 S. Riverside Plaza • 22nd Floor
Chicago, IL 60606
(312) 655-1500

Counsel for Plaintiff Ty Inc.

Members of the jury, you have seen and heard all the evidence and the arguments of the attorneys. Now I will instruct you on the law.

You have two duties as a jury. Your first duty is to decide the facts from the evidence in the case. This is your job, and yours alone.

Your second duty is to apply the law that I give you to the facts. You must follow these instructions, even if you disagree with them. Each of the instructions is important, and you must follow all of them.

Perform these duties fairly and impartially. Do not allow sympathy, prejudice, fear or public opinion to influence you. You should not be influenced by any person's race, color, religion, national ancestry, or sex.

Nothing I say now, and nothing I said or did during the trial, is meant to indicate any opinion on my part about what the facts are or about what your verdict should be.

In this case the parties are corporations. All parties are equal before the law. A corporation is entitled to the same fair consideration that you would give any individual person.

The evidence consists of the testimony of the witnesses, the exhibits admitted into evidence, and stipulations.

A stipulation is an agreement between both sides that certain facts are true or that a person would have given certain testimony.

During the trial, certain testimony was presented to you by the reading of depositions. You should give this testimony the same consideration you would give it had the witnesses appeared and testified here in court.

Certain things are not to be considered as evidence. I will list them for you:

First, if I told you to disregard any testimony or exhibits or struck any testimony or exhibits from the record, such testimony or exhibits are not evidence and must not be considered.

Second, anything that you may have seen or heard outside the courtroom is not evidence and must be entirely disregarded. This includes any press, radio, Internet or television reports you may have seen or heard. Such reports are not evidence and your verdict must not be influenced in any way by such publicity.

Third, questions and objections or comments by the lawyers are not evidence. Lawyers have a duty to object when they believe a question is improper. You should not be influenced by any objection, and you should not infer from my rulings that I have any view as to how you should decide the case.

Fourth, the lawyers' opening statements and closing arguments to you are not evidence. Their purpose is to discuss the issues and the evidence. If the evidence as you remember it differs from what the lawyers said, your memory is what counts.

Any notes you have taken during this trial are only aids to your memory. The notes are not evidence. If you have not taken notes, you should rely on your independent recollection of the evidence and not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollections or impressions of each juror about the testimony.

In determining whether any fact has been proved, you should consider all of the evidence bearing on the question regardless of who introduced it.

You will recall that during the course of this trial I instructed you that I admitted certain evidence for a limited purpose. You must consider this evidence only for the limited purpose for which it was admitted.

You should use common sense in weighing the evidence and consider the evidence in light of your own observations in life.

In our lives, we often look at one fact and conclude from it that another fact exists. In law we call this "inference." A jury is allowed to make reasonable inferences. Any inference you make must be reasonable and must be based on the evidence in the case.

You may have heard the phrases "direct evidence" and "circumstantial evidence." Direct evidence is proof that does not require an inference, such as the testimony of someone who claims to have personal knowledge of a fact. Circumstantial evidence is proof of a fact, or a series of facts, that tends to show that some other fact is true.

As an example, direct evidence that it is raining is testimony from a witness who says, "I was outside a minute ago and I saw it raining." Circumstantial evidence that it is raining is the observation of someone entering a room carrying a wet umbrella.

The law makes no distinction between the weight to be given to either direct or circumstantial evidence. You should decide how much weight to give to any evidence. In reaching your verdict, you should consider all the evidence in the case, including the circumstantial evidence.

You must decide whether the testimony of each of the witnesses is truthful and accurate, in part, in whole, or not at all. You also must decide what weight, if any, you give to the testimony of each witness.

In evaluating the testimony of any witness, including any party to the case, you may consider, among other things:

-    the ability and opportunity the witness had to see, hear, or know the things that the witness testified about;

-    the witness' memory;

-    any interest, bias, or prejudice the witness may have;

-    the witness's intelligence;

-    the manner of the witness while testifying;

-    the witness's age;

-    and the reasonableness of the witness's testimony in light of all the evidence in the case.

You may consider statements given by a party or witness under oath before trial as evidence of the truth of what he said in the earlier statements, as well as in deciding what weight to give his testimony.

With respect to other witnesses, the law is different. If you decide that, before the trial, one of these witnesses made a statement not under oath that is inconsistent with his testimony here in court, you may consider the earlier statement only in deciding whether his testimony here in court was true and what weight to give to his testimony here in court.

In considering a prior inconsistent statement(s), you should consider whether it was simply an innocent error or an intentional falsehood and whether it concerns an important fact or an unimportant detail.

It is proper for a lawyer to meet with any witness in preparation for trial.

You may find the testimony of one witness or a few witnesses more persuasive than the testimony of a larger number. You need not accept the testimony of the larger number of witnesses.

The law does not require any party to call as a witness every person who might have knowledge of the facts related to this trial. Similarly, the law does not require any party to present as exhibits all papers and things mentioned during this trial.

You have heard witnesses give opinions about matters requiring special knowledge or skill. You should judge this testimony in the same way that you judge the testimony of any other witness. The fact that such a person has given an opinion does not mean that you are required to accept it. Give the testimony whatever weight you think it deserves, considering the reasons given for the opinion, the witness's qualifications, and all of the other evidence in the case.

Certain demonstrative exhibits, such as diagrams or charts have been shown to you. These demonstrative exhibits are used for convenience and to help explain the facts of the case. They are not themselves evidence or proof of any facts.

The parties have stipulated or agreed that Softbelly's total sales of its Screenie Beanie products for the period from January 1, 1999 to February 23, 2001, was $1,150,650.36. You must now treat this fact as having been proved for the purpose of this case.

I have a duty to caution or warn an attorney who does something that I believe is not in keeping with the rules of evidence or procedure. You are not to draw any inference against the side whom I may caution or warn during the trial.

When I say a particular party must prove something by "a preponderance of the evidence," or when I use the expression "if you find," or "if you decide," this is what I mean: When you have considered all the evidence in the case, you must be persuaded that it is more probably true than not true.

In this case, Plaintiff contends that the Defendants have infringed the Plaintiff's trademarks, diluted the Plaintiff's trademarks, and engaged in unfair competition. The Plaintiff has the burden of proving by a preponderance of the evidence that the Plaintiff is the owner of valid trademarks and that the Defendant infringed and/or diluted one or more of those trademarks.

A trademark is a word, name, symbol, device, or any combination thereof, used by a person to identify and distinguish that person's goods from those of others and to indicate the source of the goods.

A person acquires the right to exclude others from using a trademark by being the first to use it in the marketplace. Rights in a trademark are obtained only through commercial use of the mark. The owner of a trademark has the right to exclude others unless the trademark has been abandoned.

Once the owner of a mark has obtained the right to exclude others from using the trademark, the owner may obtain a certificate of registration, issued by the United States Patent and Trademark Office. Thereafter, when the owner brings an action for infringement, the owner may rely solely on the registration certificate to prove that the owner has the right to exclude others from using the trademark in connection with the type of goods specified in the certificate.

The trademark laws balance three often-conflicting goals: 1) protecting the public from being misled about the nature and source of goods and services, so that the consumer is not confused or misled in the market; 2) protecting the rights of a business to identify itself to the public and its reputation in offering goods and services to the public; and 3) protecting the public interest in fair competition in the market.

The balance of these policy objectives vary from case to case, because they may often conflict. Accordingly, each case must be decided by examining its specific facts and circumstances, of which you are to judge.

In my instructions, I will identify types of facts you are to consider in deciding if the Defendants are liable to the Plaintiff for violating the trademark law. These facts are relevant to whether the Defendants are liable for:

(1)    infringing Plaintiff's registered and unregistered trademark rights, by using a trademark in a manner likely to cause confusion among consumers; and

(2)    unfairly competing, by using a trademark in a manner likely to cause confusion as to the origin or quality of Plaintiff's goods.

On the Plaintiff's claim for trademark infringement, the plaintiff has the burden of proving each of the following by a preponderance of the evidence that:

1. BEANIE BABIES, THE BEANIE BABIES COLLECTION and/or BEANIE(S) are valid, protectable trademarks;

2. the Plaintiff owns BEANIE BABIES, THE BEANIE BABIES COLLECTION and/or BEANIE(S) as trademarks; and

3. the Defendants used a mark similar to BEANIE BABIES, THE BEANIE BABIES COLLECTION and/or BEANIE(S) without the consent of the Plaintiff in a manner that is likely to cause confusion among ordinary purchasers as to the source of the goods.

If you find that each of the elements on which the Plaintiff has the burden of proof has been proved, your verdict should be for the Plaintiff. If, on the other hand, the Plaintiff has failed to prove any of these elements, your verdict should be for the Defendants.

I gave you a previous instruction that requires Plaintiff to prove by a preponderance of the evidence that the trademarks are valid and protectable, and that the Plaintiff owns the trademarks.

One way for the Plaintiff to prove trademark validity is to show that the trademark is registered. An owner of a trademark may obtain a certificate of registration issued by the United States Patent and Trademark Office and may submit that certificate as evidence of the validity and protectability of the trademark and of the certificate holder's ownership of the trademark covered by that certificate.

Plaintiff's Trial Exhibits 136 and 138 are certificates of registration from the United States Patent and Trademark Office. They were submitted by the Plaintiff as proof of the validity of the trademarks, and that Plaintiff owns the trademarks.

In this case there is no dispute that the Plaintiff received registrations for the trademarks BEANIE BABIES and THE BEANIE BABIES COLLECTION and these registrations are now "incontestable" under the trademark laws. This means that the Plaintiff's registration of the trademarks is conclusive evidence of Plaintiff's ownership of those trademarks and that the trademarks are valid and protectable. I instruct you that for purpose of the previous instruction you must find that the Plaintiff owns the trademarks and that the trademarks BEANIE BABIES and THE BEANIE BABIES COLLECTION are valid and protectable.

Because Plaintiff has not obtained a federal trademark registration for the word "beanie(s)," Plaintiff has the burden of proving by a preponderance of the evidence that "beanie(s)" is a valid trademark.

I gave you a previous instruction that requires the Plaintiff to prove by a preponderance of the evidence that the unregistered mark BEANIE(S) is valid. A valid trademark is a word or symbol that is either:

1.     inherently distinctive; or

2.     descriptive, but has acquired secondary meaning.

Only a valid trademark can be infringed. Only if you determine Plaintiff proved by a preponderance of the evidence that BEANIE(S) is a valid trademark should you consider whether Plaintiff owns it or whether Defendants' actions infringed it.

Only if you determine that BEANIE(S) is not inherently distinctive should you consider whether it is descriptive but became distinctive through the development of secondary meaning, as I will direct in a later instruction on secondary meaning.

How distinctively a trademark indicates that a good comes from a particular source, even if unknown, is an important factor to consider in assessing its validity and for determining whether the trademark used by the Defendants creates for consumers a likelihood of confusion with the Plaintiff's trademark.

The Plaintiff asserts "BEANIE(S)" is a valid and protectable trademark for its plush toys. The Plaintiff contends that the Defendants' use of the mark – SCREENIE BEANIES - in connection with the Defendants' computer monitor cleaners infringes Plaintiff's trademark and is likely to cause confusion about the origin of goods associated with that trademark .

In order to determine if the Plaintiff has met its burden of showing that BEANIE(S) is a valid trademark, you should classify it on the spectrum of trademark distinctiveness that I will explain in this instruction.

An inherently distinctive trademark is a word, symbol or device, or combination of them, which intrinsically identifies a particular source of a good in the market. The law assumes that an inherently distinctive trademark is one that almost automatically tells a consumer that it refers to a brand or a source for a product, and that consumers will be predisposed to equate the trademark with the source of the product.

### *Spectrum of Marks*

Trademark law provides great protection to distinctive or strong trademarks. Conversely, trademarks that are not as distinctive or strong are called "weak" trademarks and receive less protection from infringing uses. Trademarks that are not distinctive are not entitled to any trademark protection. For deciding trademark protectability, you must consider whether a trademark is inherently distinctive. Trademarks are grouped into four categories according to their relative strength or distinctiveness. These four categories are, in order of strength or

distinctiveness: arbitrary (which is inherently distinctive), suggestive (which is also inherently distinctive), descriptive (which is protected only if it acquires in consumer's minds a "secondary meaning" which I will explain in the following instruction on Secondary Meaning) and generic trademarks (which are entitled to no protection).

**Arbitrary and Fanciful Trademarks**. The first category of inherently distinctive trademarks includes "arbitrary" and "fanciful" marks. They are considered strong marks and are clearly protectable. They involve the arbitrary, fanciful or fictitious use of a word to designate the source of a product. Such a trademark is a word that in no way describes or has any relevance to the particular product it is meant to identify. It may be a common word used in an unfamiliar way. It may be a newly created (coined) word or parts of common words which are applied in a fanciful, fictitious or unfamiliar way, solely as a trademark.

For instance, the common word "apple" because a strong and inherently distinctive trademark when used by a company to identify the personal computers that company sold. The company's use of the word "apple" was arbitrary or fanciful because "apple" did not describe and as not related to what the computer was, its components, ingredients, quality or characteristics. "Apple" was being used in an arbitrary way to designate for consumers that the computer comes from a particular manufacturer or source.

**Suggestive Trademarks**. The next category of marks is suggestive trademarks. These trademarks are also inherently distinctive but are considered weaker than arbitrary trademarks. Unlike arbitrary trademarks, which are in no way related to what the product is or its components, quality or characteristics, suggestive trademarks imply some characteristic or quality of the product to which they are attached. If the consumer must use imagination or any type of multi-stage reasoning to understand the trademark's significance, then the trademark

does not describe the product's features, but suggests them.

A suggestive use of a word involves consumers associating the qualities the word suggests to the product to which the word is attached. For example, when "apple" is used not to indicate a certain company's computers, but rather "Apple-A-Day" Vitamins, it is being used as a suggestive trademark. "Apple" does not describe what the vitamins are. However, consumers may come to associate the healthfulness of an "apple a day keeping the doctor away" with the supposed benefits of taking "Apple—A—Day" Vitamins.

**Descriptive Trademarks**. The third category of marks is descriptive trademarks. These trademarks directly identify or describe some aspect, characteristic, ingredient, or quality of the product to which they are affixed in a straightforward way that requires no exercise of imagination to be understood.

For instance, the word "apple" is descriptive when used in the trademark "CranApple" to designate a cranberry-apple juice. It directly describes ingredients of the juice. Other common types of descriptive trademarks identify where a product comes from, or the name of the person who makes or sells the product. Thus, the words "Apple Valley Juice" affixed to cider from the California town of Apple Valley is a descriptive trademark because it geographically describes where the cider comes from. Similarly, a descriptive trademark can be the personal name of the person who makes or sells the product. So, if a farmer in Apple Valley, Judy Brown, sold her cider under the label "Judy's Juice" (rather than Cran Apple) she is making a descriptive use of her personal name to indicate and describe who produced the apple cider and she is using her first name as a descriptive trademark.

**Generic Trademarks**. The fourth category of trademarks is generic trademarks. The Court has found that the mark BEANIE(S) is not generic in connection with plush toys. That

issue is no longer before you.

### *Mark Distinctiveness and Validity*

If you decide that the word "BEANIE(S)" is arbitrary, fanciful or suggestive, it is considered to be inherently distinctive. An inherently distinctive trademark is valid and protectable.

If you decide that the word "BEANIE(S)" is descriptive, you will not know if the trademark is valid or invalid until you consider if it has gained distinctiveness by the acquisition of secondary meaning, which I explain in a later instruction on secondary meaning.

One of the factors that may be used in determining the strength or weakness of Plaintiff's mark is the extent of third party use of marks similar or identical to Plaintiff's. In order for third party usage to affect the strength of Plaintiff's mark, it must be shown that the third parties are actually using the marks, and that the third parties' marks are well-promoted and are recognized by consumers.

If you determined that BEANIE(S) is descriptive, you must consider the recognition that the mark has among prospective purchasers. This market recognition is called the trademark's "secondary meaning."

A word acquires secondary meaning when it has been used in such a way that its primary significance in the minds of the prospective purchasers is not the product itself, but the identification of the product with a single source, regardless of whether consumers know who or what that source is. You must find that the preponderance of the evidence shows that a significant number of the consuming public associates the BEANIE(S) mark with a single source, in order to find that it has acquired secondary meaning.

You may consider the following when you determine whether BEANIE(S) has achieved a secondary meaning:

1.  The amount and manner of advertising;

2.  The sales volume;

3.  The length and manner of use;

4.  Consumer testimony; and

5.  Consumer surveys.

Descriptive marks are protectable only to the extent you find they acquired distinctiveness by the public coming to associate the mark with a particular source. Descriptive marks are entitled to protection only as broad as the secondary meaning they have acquired, if any. If they have acquired no secondary meaning, they are entitled to no protection and cannot be considered a valid mark.

The Plaintiff has the burden of proving that the BEANIE(S) mark has acquired a secondary meaning. The mere fact that the Plaintiff is using BEANIE(S) or that Plaintiff began

using it before the Defendants, does not mean that the trademark has acquired secondary meaning. There is no particular length of time that a trademark must be used before it obtains secondary meaning.

If the Plaintiff's BEANIE(S) mark is not inherently distinctive, but the Plaintiff has shown that the trademark is descriptive and that the trademark has acquired secondary meaning, the Plaintiff has the burden of showing by a preponderance of the evidence that the Plaintiff's BEANIE(S) mark had gained secondary meaning before the Defendants first began to use the SCREENIE BEANIES mark.

The law entitles the trademark owner to exclude others from using that trademark.

A person acquires the right to exclude others from using a trademark by being the first to use it in the marketplace.

If you find the Plaintiff's BEANIE(S) mark to be valid, you must consider whether the Plaintiff used the BEANIE(S) mark as a trademark for Plaintiff's plush toys before the Defendants began to use the SCREENIE BEANIES trademark to market their plush toys.

A trademark is "used" for purposes of this instruction when it is transported or sold in commerce and the trademark is attached to the product, or placed on its label or container.

If you find by a preponderance of the evidence that the Plaintiff has not shown that the Plaintiff used BEANIE(S) before Defendants' use of SCREENIE BEANIES, then you cannot conclude that the Plaintiff is the owner of the trademark for purposes of the Instruction on unregistered trademark infringement and unfair competition.

If the public has come to shorten a trademark into a nickname, then the nickname is entitled to independent legal protection as a mark. Examples of nicknames held protectable as trademarks include: COKE for COCA-COLA and BUD for BUDWEISER beer.

Moreover, abbreviations and nicknames of trademarks used *only* by the public give rise to protectable rights in the owners of the trademark which the public modified. Such public use of a mark is deemed to be on behalf of the mark's owner.

Therefore, if you find that the public had come to shorten the trademark BEANIE BABIES into the nickname BEANIE or BEANIES, then you may find that such public use was on behalf of and attributable to the Plaintiff.

You must consider whether the Defendants' use of the trademarks SCREENIE BEANIES and THE SCREENIE BEANIES COLLECTION is likely to cause confusion concerning the source, affiliation or sponsorship of the Defendants' goods.

I will suggest some factors you should consider in deciding this. The presence or absence of any particular factor that I suggest should not necessarily resolve whether there was a likelihood of confusion, because you must consider all relevant evidence in determining this. As you consider the likelihood of confusion, you should examine the following;

1. **Strength of the Plaintiff's marks.** The more the consuming public recognizes the Plaintiff's trademarks as an indication of origin of the Plaintiff's goods, the more likely it is that consumers would be confused about the source of the Defendants' goods if the Defendants use a similar mark.

2. **Similarity of the products for which the name is used.** If the Defendants and Plaintiff use their trademarks on the same or related goods or complementary kinds of goods there may be a greater likelihood of confusion about the source of the goods than otherwise.

3. **The degree of similarity between the marks.** If the overall impression created by the Plaintiff's trademarks is similar to that created by the Defendants' trademarks in appearance, sound or meaning, there is a greater chance that consumers are likely to be confused by Defendants' use of a mark. Similarities in appearance, sound or meaning weigh more heavily than differences in finding the marks are similar. It is the impression which the mark as a whole creates on the average reasonably prudent buyer and not the parts thereof which is important.

4. **Actual confusion.** If use by the Defendants of the Plaintiff's claimed trademark

has led to instances of actual confusion, this strongly suggests a likelihood of confusion. However actual confusion is not required for a finding of likelihood of confusion. Even if actual confusion did not occur, the Defendants' use of the trademark may still be likely to cause confusion, you may conclude that the amount of actual confusion was not substantial. As you consider whether the trademark used by the Defendants creates for consumers a likelihood of confusion with the Plaintiff's trademark, you should weigh any instances of actual confusion against the opportunities for such confusion. If the instances of actual confusion have been relatively frequent, you may find that there has been substantial actual confusion. If, by contrast, there is a very large volume of sales, but only a few isolated instances of actual confusion you may find that there has not been substantial actual confusion.

5.     **Defendants' intent.** Knowing use by Defendants of the Plaintiff's trademarks to identify similar goods may strongly show an intent to derive benefit from the reputation of the Plaintiff's marks, suggesting an intent to cause a likelihood of confusion. On the other hand, even in the absence of proof that the Defendants acted knowingly, the use of Plaintiff's trademarks to identify similar goods may indicate a likelihood of confusion. In the trademark context, "intent" refers to the intent to confuse customers, not merely the intent to use a mark that is already in use somewhere else.

6.     **Area and manner of concurrent use.** If the Plaintiff's and Defendants' goods are likely to be sold in the same or similar stores or outlets, or advertised in similar media, this increases the likelihood of confusion.

7.     **Degree of care likely to be exercised by consumers.** The more sophisticated the potential buyers of the goods or the more costly the goods, the more careful and discriminating the reasonably prudent purchaser exercising ordinary caution may be. They may be less likely to be confused by similarities in the Plaintiff's and Defendants' marks.

Plaintiff has also asserted state law claims under the Illinois common law of unfair competition and deceptive trade practices.

A claim of unfair competition and deceptive trade practices brought under Illinois common law is resolved according to the same principles that govern Plaintiff's federal trademark infringement and unfair competition claims. As a result, if you find for Plaintiff on its federal trademark infringement and unfair competition claims, then you also should find for Plaintiff on its state law claims. On the other hand, if you find for the Defendants on Plaintiff's federal trademark infringement and unfair competition claims, then you should find for the Defendants on Plaintiff's state law claims as well.

This case also involves a claim by Plaintiff that Defendants have violated Plaintiff's rights under the Federal Anti-Dilution statute. Specifically, Plaintiff claims that the Defendants' use of the marks SCREENIE BEANIES and THE SCREENIE BEANIES COLLECTION dilutes the distinctive quality of Plaintiff's trademarks. "Dilution" means the lessening of the capacity of a famous mark to identify and distinguish goods—regardless of the presence or absence of competition between the owner of the famous mark and the other parties, or likelihood of confusion, mistake or deception.

To establish dilution of its trademarks Plaintiff must prove four elements by a preponderance of the evidence:

1. That its trademarks are famous;

2. That Defendants used the same or a similar mark after Plaintiff's marks became famous;

3. That the Defendants' use of the same or similar trademarks caused actual dilution of Plaintiff's marks; and

4. Defendants' use of its mark is commercial and in commerce.

In determining whether Plaintiff's claimed trademark has become famous, you may consider the following facts:

1.      The degree of inherent or acquired distinctiveness of the mark;

2.      The duration and extent of use of the mark in connection with the goods with Which the mark is used;

3.      The duration and extent of advertising and publicity of the mark;

4.      The geographical extent of the trading area in which the mark are used;

5.      The channels of trade for the goods or services with which the mark are used;

6.      The degree of recognition of the mark in the trading areas and channels of trade used by the Plaintiff and the Defendants;

7.      The nature and extent of use of the same or similar mark by third parties; and

8.      Whether the mark is registered with the United States Patent and Trademark Office.

On any claim, if you find that each of the elements on which the Plaintiff has the burden of proof has been proved by a preponderance of the evidence, your verdict should be for the Plaintiff on that claim.

On the other hand, if you find that each of the elements on which the Plaintiff has the burden of proof has not been proved by a preponderance of the evidence, your verdict should be for the Defendants on that claim.

Upon retiring to the jury room, you must select a presiding juror. The presiding juror will preside over your deliberations and will be your representative here in court.

Forms of verdict have been prepared for you.

[Forms of verdict read.]

Take these forms to the jury room, and when you have reached unanimous agreement on the verdict, your presiding juror will fill in and date the appropriate form, and all of you will sign it.

I do not anticipate that you will need to communicate with me. If you do need to communicate with me, the only proper way is in writing. The writing must be signed by the presiding juror, or, if he or she is unwilling to do so, by some other juror. The writing should be given to the marshal, who will give it to me. I will respond either in writing or by having you return to the courtroom so that I can respond orally.

If you do communicate with me, you should not indicate in your note what your numerical division is, if any.

The verdicts must represent the considered judgment of each juror. Your verdicts, whether for or against the parties, must be unanimous.

You should make every reasonable effort to reach a verdict. In doing so, you should consult with one another; express your own views, and listen to the opinions of your fellow jurors. Discuss your differences with an open mind. Do not hesitate to re-examine your own view and change your opinion if you come to believe it is wrong. But you should not surrender your honest beliefs about the weight or effect of evidence solely because of the opinions of other jurors or for the purpose of returning a unanimous verdict.

All of you should give fair and equal consideration to all the evidence and deliberate with the goal of reaching an agreement that is consistent with the individual judgment of each juror. You are impartial judges of the facts.

## VERDICT FORM

**1.    Federal Trademark Infringement**

On Ty's claim for infringement of its claimed trademarks BEANIE BABIES, THE BEANIE BABIES COLLECTION, and/or BEANIE(S) against Softbelly's and Positive Products Consultants, LLC under the Lanham Act, we the jury find for (check one):

_____ Ty Inc.        _____ Softbelly's, Inc. and Positive Products Consultants, LLC

*Answer the following Question No. 2 only if you have found for Ty in response to Question 1 (otherwise, skip to Question No. 3):*

**2.    Illinois Common Law Unfair Competition**

On Ty's claim for common law unfair competition and deceptive trade practices against Softbelly's and Positive Products Consultants, LLC, we the jury find for (check one):

_____ Ty Inc.        _____ Softbelly's, Inc. and Positive Products Consultants LLC

**3.    Federal Trademark Dilution**

On Ty's claim for dilution of its claimed trademarks BEANIE BABIES, THE BEANIE BABIES COLLECTION, and/or BEANIE(S) against Softbelly's and Positive Products Consultants, LLC under the Lanham Act, we the jury find for (check one):

_____ Ty Inc.        _____ Softbelly's, Inc. and Positive Products Consultants, LLC

Signed this _____ day of April, 2006.

_____
Presiding Juror

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

## Certificate Of Service

I hereby certify that on April 27, 2006, I electronically filed the foregoing copy of the foregoing **Final Jury Instructions and Verdict Form** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all Filing Users, including the following:

Andrew M. Hale
ahale@rockfuscollc.com

Kevin W. Horan
khoran@rockfuscollc.com

John J. Rock
jrock@rickfuscollc.com

/s/ Laurie A. Haynie
Counsel for Plaintiff