UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TY, INC., )
)
      Plaintiff, )
)
vs. ) Case No. 00 C 5230
) Judge Joan H. Lefkow
SOFTBELLY'S, INC. and POSITIVE )
PRODUCTS CONSULTANTS, LLC, )
)
      Defendants. )

## MEMORANDUM DECISION

Plaintiff, Ty, Inc., ("Ty") has moved for attorneys' fees and related nontaxable expenses in connection with the judgment entered in its favor on November 22, 2006, on the basis that this is an "exceptional case" under Section 35 of the Lanham Trade-Mark Act, 15 U.S.C. § 1117(a), which provides that the court "in exceptional cases may award reasonable attorney fees to the prevailing party." For the reasons stated below, the motion is granted.

Ty is plainly the prevailing party. For the purpose of fee-shifting statutes, a party has prevailed "if [it succeeds] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983) (citation omitted) (interpreting Civil Rights Act fee shifting provision). The jury returned a verdict in Ty's favor on Ty's claims of infringement under the Lanham Act and for common law unfair competition. The damages had been previously established at $713,046.47 although (for reasons well known to the parties) this court has reduced those damages to $0. Thus, the final judgment consisted of an injunction restraining the

defendants, Softbelly's, Inc. and Positive Products, Inc. ("Softbelly's"), from the infringement. Although the jury's verdict was in favor of Softbelly's on Ty's Lanham Act claim for dilution of its trademarks, even had Ty prevailed on its dilution claim it would have been entitled to no greater relief than it achieved. Ty is, therefore, the prevailing party.

Although the statute does not define "exceptional case," the dominant theme among the appellate cases is that an exceptional case is one "involving some measure of culpability on the part of the losing party." *TE-TA-MA Truth Foundation-Family of URI, Inc. v. World Church of the Creator*, 392 F.3d 248, 257 (7th Cir. 2004). The "canonical formula" applied by the courts of appeals to determine an exceptional case is whether the "acts of infringement can be characterized as malicious, fraudulent, deliberate, or willful." *Id.*, citing *Door Systems, Inc. v. Pro-Line Door Systems, Inc.*, 126 F.3d 1028, 1031 (7th Cir. 1997) (collecting authority); *see also Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 746 (7th Cir. 1985). Contrary to the independent alternatives enumerated in the canon, however, mere deliberateness is an insufficient basis for exceptional case designation.[1] Rather, the Seventh Circuit interprets the

---

[1] Ty cites *World Impressions, Inc. v. McDonald's Corp.*, 2003 WL 1918219, at *1 (N.D. Ill. April 21, 2003), where the infringer produced a map that incorporated the trademark owner's mark in designating the owner's location on its map. Because the plaintiff intended to make it appear that the owner of the mark had sponsored the map, the court found the infringement deliberate, entitling the plaintiff to fees. *Id.* Awarding fees based only on a finding of mere deliberateness, however, does not appear to be consistent with Seventh Circuit case law.

In *Door Systems*, a case in which the defendant prevailed, the Seventh Circuit retreated from deliberateness as a basis for fees. 126 F.3d at 1032 ("One firm might copy another's trademark believing in good faith that it was privileged to do so; it would be acting deliberately, and so could be ordered ... to pay the other party's attorney's fees ...."). The court stated, "It would not do justice to the statutory word "exceptional" ... to say that any time a plaintiff loses, the district court can award attorneys' fees to the defendant merely because the plaintiff acted deliberately, albeit in perfect good faith, in bringing the suit." *Id. See also Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145, 1159 (7th Cir. 1994) (intentional copying of a competitor's trade dress is insufficient to justify fees under section 1117(a)); *TE-TA-MA*, 392 F.3d at 260 (announcing that standards for exceptional case determination are to be "party-neutral," *i.e.*, the same for the losing party, whether an accuser of infringement or an accused infringer).

2

exceptional case doctrine to require, at least, a finding of willful infringement. *Roulo* v. *Russ Berrie & Co., Inc.*, 886 F.2d 931, 942 (7th Cir. 1989) (citing *Hairline Creations, Inc. v. Kefalas*, 664 F.2d 652, 657-58 (7th Cir.1981)).

"[A] finding of willfulness is justified 'if the infringer knows that its conduct is an infringement or if the infringer has acted in reckless disregard of the . . . owner's right.'" *Wildlife Express Corp.* v. *Carol Wright Sales, Inc.*, 18 F.3d 502, 511 (7th Cir. 1994) (interpreting Copyright Act) (quoting *Video Views, Inc. v. Studio 21, Ltd.*, 925 F.2d 1010, 1020 (7th Cir. 1991)). "Willful blindness" to the copyright or trademark owner's rights amounts to "actual knowledge." *See Hard Rock Cafe Licensing Corp.* v. *Concession Services, Inc.*, 955 F.2d 1143, 1149 (7th Cir. 1992) ("[W]e have held that willful blindness is equivalent to actual knowledge for purposes of the Lanham Act. . . .") "To be willfully blind, a person must suspect wrongdoing and deliberately fail to investigate." *Id.*

In *Badger Meter, Inc.* v. *Grinnell Corp.*, 13 F.3d 1145, 1159-60 (7th Cir. 1994) (collecting cases), the court described as fee-worthy cases where the infringer's conduct "involve[s] truly egregious, purposeful infringement, or other purposeful wrongdoing," whereas "cases that refuse to award attorneys' fees . . . might involve deliberate copying of a competitor's product, but do not involve purposeful infringement of the competitor's trademark or trade dress." In the trade dress context, for example, the court excepted situations where the infringer made conscious effort to create dissimilarities so as to avoid liability for infringement, or where proof of a defense was a "close call." *Id.*

In treating the issue of willfulness, courts have considered whether the defendant intended to trade on the plaintiff's mark and whether, once notified to cease and desist, the

3

infringer responded prudently by seeking advice of counsel or, on the other hand, chose to ignore the owner's claim. *E.g., Wildlife Express Corp*, 18 F.3d at 512 ("the trier of fact may consider evidence that the defendant ignored the plaintiff's notices about copyright protection, did not seek advice of an attorney, and passed the matter off as a nuisance."); *Tony Jones Apparel, Inc. v. Indigo USA, LLC*, 2005 WL 1667789, at *8 (N.D. Ill. 2005) (willful infringement found where defendants never performed a trademark search and did not seek the advice of counsel with respect to the marks on the counterfeit goods and the corporate defendants failed to respond to requests that they cease and desist their infringing activities). On the other hand, fees have been denied where deliberate copying existed but defendant was "armed with a well intended letter from trademark counsel stating that there was no infringement." *CFM Majestic, Inc. v. NHC, Inc.*, 93 F. Supp. 2d 942, 961 (N.D. Ind. 2000).

Ty points to Softbelly's' president Thomas Devaney's admission that he modeled the product after Beanie Babies and adopted the marks "Screenie Beanies" and "The Screenie Beanies Collection" knowing of Ty's marks, "Beanie Babies" and "The Beanie Babies Collection." Devaney purposely decided to "push the envelope" by using marks very similar to Ty's marks. (Bivens testimony, Tr. 470-71). Softbelly's also used a hang tag designed similarly to Ty's hang tag placed in the same location as Ty uses and gave Screenie Beanies personality as Ty does with names, birth dates and poems on the hang tags. Softbelly's proceeded without advice of counsel even after receiving notice from the United States Patent and Trademark Office that its application to register the mark "SCREENIEBEANIES" had been refused based on likelihood of confusion with Ty's registered marks and after receiving Ty's demand to cease and

desist. Ty also cites evidence that some of Softbelly's' customers insisted on an indemnity agreeement as a condition of purchasing Softbelly's' products.

Softbelly's responds to Ty's arguments that the infringement was willful by rearguing its position that there was no likelihood of confusion about the source of Softbelly's products, reviewing the various factors that the jury weighed in reaching the opposite conclusion in this case. That difficulty aside, the evidence Softbelly's cites concerning its intent (or willfulness) include principally that Devaney's mother-in-law came up with the name "Screenie Beanies," that the various animal designs came from B&B Toys, and that an attorney sent a letter to Ty in response to Ty's cease and desist letter.

The record in this case is voluminous and it is impracticable to recite all the evidence bearing on willfulness. Nevertheless, the court has reviewed all the citations to the record contained in the briefs on this motion and considered the arguments and cited authorities with care. Having considered all of these materials, the court is persuaded that Softbelly's' infringement was indeed willful and this case is exceptional. The case is perhaps most similar to the facts presented in *Hallmark Cards, Inc. v. Hallmark Dodge, Inc.*, 634 F. Supp. 990, 995 (W.D. Mo. 1986), in which an automobile dealership near Kansas City, the corporate headquarters of Hallmark Cards, Inc., renamed itself Hallmark Dodge, knowing of the strong name recognition and good reputation of the card company in the Kansas City area. The dealership incorporated a script rendition of "Hallmark" in its logo similar to Hallmark Card's logo, and began using "we care" slogans in its advertising, knowing that Hallmark widely used the slogan, "We care enough to send the very best." *Id.* at 995-96. The dealership argued that "hallmark" was generic and there was no likelihood of confusion but the court held that the

defendant was willfully infringing. *Id.* At 997-1000. In this case, Softbelly's made an aggressive, uncounseled, and persistent endeavor to trade on the success and reputation of Ty's marks. The combination of Softbelly's' knowledge of Ty's strong reputation as the source of this particular type of plush bean bag toy, Softbelly's' marketing a very similar product with confusingly similar marks, and its refusal to change course even after notice from the USPTO and Ty that Softbelly's' mark was confusingly similar to Ty's, is convincing evidence[2] that Softbelly's not only infringed but infringed willfully and with culpable intent.

In light of this conclusion, the court will not address Ty's argument that this is an exceptional case because Softbelly's engaged in vexatious litigation conduct. *See TE-TA-MA* (holding that a court may find a case exceptional based on vexatious litigation conduct even though the defendant's infringement was not willful).

---

[2]"See" citing *Finance Inv. Co. (Bermuda) Ltd.* v. *Geberit*, 165 F.3d 526, 533 (7th Cir. 1998), and *Pebble Beach Co.* v. *Northern Bay LLC*, 405 F. Supp. 2d 1019 (W.D. Wis. 2005), Softbelly's states, "A finding of a case being exceptional under the Lanham Act must be proven by clear and convincing evidence." This statement is not firmly grounded. The requirement that evidence be clear and convincing appears to derive from "exceptional case" jurisprudence in patent law. *See, e.g, Beckman Instruments, Inc.*, v. *LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed. Cir. 1989) (under 35 U.S.C. § 285, conduct justifying an "exceptional case" finding "must be supported by clear and convincing evidence."). In dictum in *Geberit* (and without citing a Lanham Act case holding that the clear and convincing standard applies) the court stated that the clear and convincing standard applies, but only to unfounded suits brought by trademark owners:

> Although § 1117 generally operates as an expense-and-fee shifting statute for prevailing parties against infringers, it may in exceptional circumstances, and when proven by clear and convincing evidence, "provide protection against unfounded suits brought by trademark owners for harassment and the like."

*Geberit*, 165 F.3d at 533 (citations omitted). *Pebble Beach* cites *Geberit* for the clear and convincing standard for assessing fees sought against a trademark owner. 405 F. Supp. 2d at 1025. That said, and without addressing the apparent discord between the "broad discretion" based on "broad principles of equity" committed to the district courts, *e.g., TE-TA-MA*, 392 F.3d at 260, 261, and a clear and convincing standard of proof, the court reaches its result based on a clear and firm conviction that it is justified by the evidence in the record.

ORDER

Ty's motion for Attorney's Fees and Related Nontaxable Expenses is granted. The parties are to proceed according to LR 54.3(d) in a sincere effort to reach agreements as to the amount of the award.

ENTER:

Dated: March 6, 2007

JOAN HUMPHREY LEFKOW
United States District Judge